IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

WANDA F. SKANES,                        )
                                        )
            Plaintiff,                  )
                                        )
                                        )       CIV-07-1184-HE
v.                                      )
                                        )
MICHAEL J. ASTRUE,                      )
   Commissioner of Social Security      )
   Administration,                      )
                                        )
            Defendant.                  )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying her concurrent applications for disability insurance and

supplemental security income benefits under Titles II and XVI of the Social Security Act,

42 U.S.C. §§ 416(i), 423, 1382.   Defendant has answered the Complaint and filed the

administrative record (hereinafter TR___), and the parties have briefed the issues.   The

matter has been referred to the undersigned Magistrate Judge for initial proceedings

consistent with 28 U.S.C. § 636(b)(1)(B).   For the following reasons, it is recommended that

the Commissioner's decision be affirmed.

I. Background

Plaintiff protectively filed her applications on December 27, 2004. (TR 49-51).

Plaintiff was 51 years old at the time of filing, and she alleged she had been disabled since December 11, 2004. (TR 49, 52). Plaintiff's applications were administratively denied. (TR 33, 34, 205-213).   At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Falkenstein ("ALJ") on January 18, 2007. (TR 234-250).   At this hearing, Plaintiff appeared *pro se* and, after being advised by the ALJ of her right to representation, stated that she wished to proceed without representation. (TR 236).   Plaintiff testified that she was 53 years old, had a high school equivalency education, and was unable to work because of pain in her shoulders, arms, hands, and knees, swelling in her feet and hands, tingling in her arms and hands, problems with her back, and a lump in her back. (TR 237-238).   A medical advisor ("MA"), Dr. Reinhardt, and a vocational expert ("VE") also testified at the hearing.   Following the hearing, the ALJ issued a decision (TR 12-21) in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.   The agency's Appeals Counsel declined to review this decision (TR 5-8), and Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied.   Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991).   "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).   Because "all the

ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f) (2008); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the

3

national economy, given [the claimant's] age, education, and work experience." Grogan, 399

F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. Decision and Medical Record

Following the requisite sequential evaluation procedure, the ALJ determined at step

four that Plaintiff was not disabled. See Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir.

1989)(explaining five-step procedure used to evaluate disability claims).  At this step, "the

relevant analysis is whether the claimant is able to return to her past relevant work....The

burden is on the claimant to show that her impairment renders her unable to perform that

work." Maes v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir.

2008)(internal citation omitted).  The term "past relevant work" includes both the claimant's

particular previous job as well as the claimant's prior occupation as it is generally performed

in the national economy. Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045,

1051 (10th Cir. 1993).

At step two, the ALJ found that Plaintiff had severe impairments due to

"osteoarthrosis and allied disorders and carpal tunnel syndrome" and various non-severe

impairments.  At step three, the ALJ found that Plaintiff's impairments were not *per se*

disabling under the agency's Listing of Impairments.  At the fourth step, the ALJ found that

despite her severe and non-severe impairments Plaintiff retained the capacity to perform a

full range of light work limited by "some problems with left hand manipulation and some

mild shoulder pain." (TR 15).  Considering the VE's testimony, the ALJ found that Plaintiff's

residual functional capacity ("RFC") for work did not preclude her performance of her

previous jobs as a nursery school attendant, receptionist, and remnant sorter. (TR 14–21).

The record shows that Plaintiff caught her left hand in an electric fan when she was three years old, and she suffered multiple fractures and tendon lacerations. (TR 95, 100). She underwent surgery to repair the hand. (TR 97). Plaintiff was treated conservatively for a back strain following a motor vehicle accident in 2001. (TR 101, 105). X-rays of her cervical spine taken in October 2001 were interpreted as being negative. (TR 101). Plaintiff was treated conservatively for a cervical strain and headaches in April 2004 following another motor vehicle accident in which she was rear-ended. (TR 141-144). A cervical spine x-ray conducted in April 2004 was interpreted as "negative." (TR 160). Plaintiff underwent a short period of chiropractic treatment in May and June 2004. (TR 106-124). She reported improvement with treatment, and she exhibited only "mild pain" on June 7, 2004, which is the last record of this treatment. (TR 107). In an eye exam conducted in October 2004, the examining physician, Dr. Crain, noted Plaintiff was blind in her left eye but could see light in that eye and she was prescribed eyeglasses to fully correct her vision in her right eye. (TR 128-134).

In December 2004, Plaintiff sought treatment at a clinic for shoulder and knee pain, and x-rays showed "increased density" in her right knee consistent with a prior injury to the medial collateral ligament or ongoing inflammatory change. (TR 155). X-rays of Plaintiff's shoulders were interpreted as showing degenerative changes at the acromioclavicular joints of both shoulders. (TR 155). Wrist splints were prescribed for Plaintiff in December 2004 for carpal tunnel syndrome. (TR 153). In December 2004, Plaintiff sought treatment at an

emergency room for arm, shoulder, and hand pain.  She stated she was a cook at that time and "stirs food in the pot all the time." (TR 138).  The examining physician, Dr. Davis, noted Plaintiff's grip strength was normal and her shoulders exhibited full range of motion. (TR 139). Dr. Davis diagnosed an overuse syndrome and tendinitis or bursitis in her shoulders, for which wrist splints and anti-inflammatory medication were prescribed. (TR 138-140). This conservative treatment was continued in a follow-up examination of Plaintiff at the clinic in January 2005. (TR 136-137).

In a consultative examination of Plaintiff conducted in March 2005, Dr. Booth reported that Plaintiff complained of shoulder pain "almost daily," beginning approximately eighth months earlier, hand numbness and tingling since 2003, neck pain after a motor vehicle accident in June 2004, and occasional stiffness and swelling in her fingers. (TR 163). She stated she lived alone, last worked as a cook in December 2004 and stopped working due to pain in her shoulders and hands, that she was on "medical leave" from this job, and that she had been blind in her left eye since birth.  (TR 164).  Dr. Booth reported the findings of a physical examination of Plaintiff, and in a follow-up letter Dr. Booth noted that Plaintiff's "subjective report of pain and numbness" was the reason he found in his earlier report that she could not manipulate small objects or grasp tools on the left. (TR 168, 179).  Dr. Booth stated that both of Plaintiff's hands exhibited normal strength and movement during the physical examination when she was observed casually and not being directed to perform specific tasks. (TR 179).

In March 2005, Dr. Patel at Plaintiff's treating clinic examined her and noted that

Plaintiff's knee joints showed good range of motion and no effusion, deformity, or redness. (TR 174). Plaintiff was prescribed anti-inflammatory medication for osteoarthritis and advised to lose weight. (TR 174). Plaintiff was also prescribed medication for "new onset" hypertension and advised to quit smoking and alter her diet to lower her sodium intake. (TR 174).

In June 2006, Plaintiff sought treatment for pain in her neck, shoulders, and back following a motor vehicle accident. (TR 190-204). Plaintiff stated she was a student at a vocational school. (TR 203). The examining physician, Dr. Smith, ordered physical therapy for Plaintiff three times a week and prescribed pain and muscle relaxant medications. (TR 199). Plaintiff indicated she was improving in June 2006, and she apparently discontinued the physical therapy after August 4, 2006. (TR 190, 197).

Plaintiff sought emergency room treatment in January 2007 for a right arm injury following a motor vehicle accident. (TR 222). She was prescribed an arm sling and pain medication and discharged in stable condition. (TR 222-223). X-rays were interpreted as being negative, and on examination the treating physician, Dr. Hough, noted Plaintiff exhibited normal shoulder range of motion, mild tenderness, no edema, normal sensation and nerve function, mild right elbow tenderness without effusion, normal elbow range of motion, and good motor strength in her upper and lower extremities. (TR 232).

IV. <u>Step Four</u>

Plaintiff contends that the ALJ failed to develop the record by obtaining testimony from Plaintiff concerning the nature and demands of her past work. At step four, the ALJ

must complete three stages of review as follows:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.   At each of these phases, the ALJ must make specific findings.

Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003)(quoting Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996)).  Plaintiff's argument focuses on phase two of the sequential analysis.  The ALJ stated in his decision:

> The impartial vocational expert testified that the claimant has past relevant work as a cook, which was considered medium, skilled work, a kitchen helper and as a fast food service worker which were considered medium, unskilled work, a receptionist, which was considered sedentary, semiskilled, in conjunction with this job she did a remnant sorter job which she performed at a heavy level of exertion, unskilled which was described as a light [sic], nursery school attendant, which was considered light, semiskilled work and as a food assembler which was considered light, semiskilled work.

(TR 20).  Plaintiff does not question the validity of the VE's testimony concerning the vocational characteristics of Plaintiff's previous jobs as they are generally performed in the national economy. See Winfrey, 92 F.3d at 1025(VE may supply information to ALJ about the demands of a claimant's past relevant work).  Rather, Plaintiff contends that (1) the ALJ failed to question Plaintiff about the nature and demands of her past work and (2) the ALJ failed to question the VE concerning "the issues involved in making a 'past relevant work' determination." Plaintiff's Brief, at 9.   Plaintiff's reliance on the Tenth Circuit Court of

8

Appeals' decision in <u>Musgrave v. Sullivan</u>, 966 F.2d 1371 (10th Cir. 1992), is mistaken.  In

<u>Musgrave</u>, the court recognized that the ALJ has a heightened duty to develop the record

when a claimant is not represented. <u>Id.</u> at 1374.  This heightened duty contemplates that the

ALJ ask "sufficient questions to ascertain (1) the nature of a claimant's alleged impairments,

(2) what on-going treatment and medication the claimant is receiving, and (3) the impact of

the alleged impairment on a claimant's daily routine and activities." <u>Id.</u> at 1375.  The record

in this case (TR 63-70) contains detailed information provided by Plaintiff concerning the

nature and demands of her previous jobs. The ALJ did not err in obtaining testimony

concerning the vocational characteristics of Plaintiff's previous jobs from the VE.  Plaintiff

suggests that one of her prior jobs, as a nursery school attendant, might not have been

performed at an income level to qualify as substantial gainful activity ("SGA").  However,

Plaintiff stated that this work was performed 40 hours per week at the rate of $4.25 per hour.

(TR 66).  At the time it was performed, this job would qualify as SGA. <u>See</u> 20 C.F.R. §

404.1574(b)(2)(i), 416.974(b)(2)(i).  Thus, Plaintiff has failed to demonstrate that the ALJ

did not satisfy his heightened duty to develop the record considering Plaintiff's *pro se* status

at the administrative hearing.  Plaintiff speculates that her previous job as a nursery school

attendant might not have qualified as SGA based on her earnings record.  It was Plaintiff's

duty to show that she was unable to perform her past relevant work. <u>Musgrave</u>, 966 F.2d at

1376 (holding ALJ was not obligated to elicit vocational expert's testimony until claimant

established an impairment or impairments preventing him from performing his past relevant

work).  Plaintiff's own description of the job in the record provided substantial evidence to

support the ALJ's finding that this job qualified as past relevant work.  No error occurred in this respect.

Plaintiff also contends that the ALJ erred in treating Plaintiff's "composite job" at Goodwill Industries as two separate past jobs.  Plaintiff herself described her previous position at Goodwill Industries as a "clothes house hole [sic] sorter/Receptionist." (TR 65). In describing this job that she held for four years, Plaintiff described her activities as a clothes sorter ("throw clothes in box, sort house hole [sic] wares, control doors, lift boxes, T.V., computers, Stereos") and separately described her activities as a receptionist ("take donation orders [and] directions, enter into computer, hang clothes, control doors"). (TR 65). The VE testified that Plaintiff's past job as a receptionist was classified as sedentary, semiskilled work. (TR 248).  The VE also testified that in conjunction with the receptionist position Plaintiff performed work as a remnant sorter and that this position was classified as light, unskilled work. (TR 248).

Plaintiff cites <u>Valencia v. Heckler</u>, 751 F.2d 1082 (9th Cir. 1985), in support of her contention. The circumstances in <u>Valencia</u> are inapposite, however, to the circumstances in this case.  In <u>Valencia</u>, the claimant had worked for eight years as a kitchen helper and for two years as an agricultural laborer. <u>Id.</u> at 1086.  Although the ALJ classified the claimant's past jobs as "medium" exertional level positions, the Appeals Council concluded that some of the activities involved in the claimant's past jobs were performed at the "light" exertional level and, therefore, because the claimant could still perform "light" work she was not disabled. <u>Id.</u>  On appeal, the agency contended that "tomato sorting," one of the activities the

claimant performed as an agricultural worker, constituted past relevant work. Id. The Ninth

Circuit Court of Appeals found that tomato sorting was only one of many tasks the claimant

performed at the various farms where she worked and that "[t]o classify an applicant's 'past

relevant work' according to the least demanding function of the claimant's past occupations

is contrary to the letter and spirit of the Social Security Act." Id.  The court found that the

agency's position was inconsistent with the statutory scheme and the regulatory framework

for evaluating social security disability claims because it collapsed the fourth and fifth steps

of the sequential analysis. Id. at 1087.  Thus, the court reversed the agency's decision.

In this case, the VE testified that Plaintiff's previous position was composed of two

distinct jobs that fell within the light and sedentary exertional categories.  Plaintiff herself

described the position as involving two distinct jobs.  The VE testified that Plaintiff could

perform her prior job as a remnant sorter "as classified, not as performed." (TR 249).  The

VE further testified that there might be "some reduction in efficiency because of the

manipulation difficulties with the non-dominant hand" due to Plaintiff's left hand injuries.

(TR 249).  In recognition of this expert vocational testimony, the ALJ found that the number

of remnant sort positions available to Plaintiff would be reduced "due to her hand." (TR 20).

The ALJ did not err in adopting the VE's testimony with respect to the vocational

characteristics of Plaintiff's previous work. Even assuming the Ninth Circuit's decision in

Valencia is applicable, the ALJ did not find that Plaintiff could still perform only some of

the activities connected with these jobs or classify Plaintiff's previous work according to its

least demanding function.  Rather, the ALJ found that Plaintiff had the RFC to perform all

of the exertional demands of both of the past jobs identified by the VE.  Accordingly, no error occurred with respect to this portion of the ALJ's step four decision.

Plaintiff contends that the ALJ erred in failing to resolve a conflict between the VE's testimony and the United States Department of Labor's <u>Dictionary of Occupational Titles</u> ("DOT").  The VE testified that Plaintiff described her previous work as a remnant sorter as "heavy" work. (TR 248).  However, the VE testified that this job is normally performed at the "light" exertional level. (TR 248).  Plaintiff contends that there is a discrepancy between the job of remnant sorter as described in the DOT and Plaintiff's description concerning the activities she actually performed in this job.

The discrepancy alleged by Plaintiff is not between the VE's testimony and the DOT.  Rather, the discrepancy alleged by Plaintiff is a discrepancy between the Plaintiff's description of her previous job as she actually performed it and the VE's description of the job as it is generally performed in the national economy.  It is Plaintiff's burden to show that she is no longer able to perform her past jobs as she actually performed them and as they are usually performed in the national economy. The ALJ did not err in obtaining vocational testimony on the critical issue of the appropriate classification of Plaintiff's prior jobs at step four.  <u>See</u> <u>Winfrey</u>, 92 F.3d at 1025.  Nor was the ALJ required to explain any discrepancy between the Plaintiff's description of her previous job and the vocational classification of the job contained in the DOT.

Finally, Plaintiff contends that the ALJ erred in the final phase of the step four analysis.  At this stage, the ALJ must "determine[ ] whether the claimant has the ability to

meet the job demands found in phase two despite the mental and/or physical limitations found in phase one" and set forth his findings. Doyal, 331 F.3d at 760. Plaintiff contends that the ALJ did not include a limitation in his hypothetical to the VE which the ALJ included in his RFC finding. In his decision, the ALJ referred to the written RFC assessments made by the agency's medical consultants, including the assessment that Plaintiff retained the RFC for light work "with no repetitive reaching overhead with the left arm." (TR 20). The ALJ noted he generally "concur[red] with the assessment of the State agency medical consultants." (TR 20). The record shows that a medical consultant, Dr. Woodcock, determined Plaintiff's RFC for work included a limitation in reaching because she is "unable to repetitively reach overhead with the [left] arm." (TR 184).

The ALJ did not expressly adopt this limitation, however, in his RFC finding. The ALJ merely noted that Plaintiff's RFC for light work was limited by "some problems with left hand manipulation and some mild shoulder pain." (TR 15). The Tenth Circuit Court of Appeals recently criticized a similar finding by an ALJ that a social security disability claimant had "limited use" of her left hand as part of her RFC for work. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). In that case, the claimant's previous jobs all required frequent or constant handling, according to DOT job classifications. Id. at 1273. The court found that the ALJ failed to take administrative notice of this job information or ask the VE to give an opinion concerning whether the claimant's limited use of her left hand would affect her ability to perform the required handling activities in these jobs. Id. The court therefore reversed the administrative decision and remanded the case for further proceedings

13

to correct this error.  Id.

In this case, the Plaintiff did not describe any overhead reaching requirements in her previous jobs, and Plaintiff has not pointed to any vocational data that is inconsistent with the ALJ's finding that she retained the capacity to perform her previous jobs considering her RFC for work.  In the ALJ's hypothetical inquiry to the VE, the ALJ described an individual with Plaintiff's age, educational level, and work history who had a "problem with left hand manipulation since age 3, mild pain in her shoulders, [and could] lift 20 pounds occasionally, 10 pounds frequently, sit six hours in eight, [and] stand and/or walk six hours in eight." (TR 248).  Thus, the ALJ's hypothetical inquiry to the VE included the RFC limitations as found by the ALJ.  The VE responded that this individual could perform Plaintiff's previous jobs.  Although the ALJ could have been more specific concerning the exertional limitations set forth in phase two of the step four analysis, the record reflects that the ALJ made adequate findings with respect to the second and third phases of the step four analysis that are well supported by the record.

Plaintiff also refers to a finding in the consultative examiner's report that Plaintiff was not able to manipulate small objects or grasp tools in her left hand. (TR 168).  Plaintiff contends that the ALJ did not provide an explanation for rejecting this finding in determining Plaintiff's RFC for work.  The record reflects that the consultative examiner, Dr. Booth, was subsequently asked by the agency to clarify this finding in light of other evidence in his report (TR 164) showing Plaintiff exhibited full grip strength in both hands. (TR 178).  In a responsive letter, the consultative examiner explained that this particular finding was based

14

solely on Plaintiff's subjective statements and that the consultative examination provided conflicting objective medical evidence indicating "strength [and] movement of both hands appear[ed] within normal limits when observed casually [and] not being directed to perform a specific task." (TR 179).  The ALJ pointed out this inconsistency and the objective findings contained in Dr. Booth's report. (TR 19-20).  Thus, the ALJ recognized the conflict and resolved the conflict in the evidence by relying on the objective medical evidence with respect to Plaintiff's hand limitations and the absence of evidence that "any limitations or restrictions [had been] placed on her ability to perform basic work activities by any treating or examining physicians." (TR 20).  The ALJ found that Plaintiff had limited use of her left hand.  However, the record shows Plaintiff performed her previous jobs despite the limitation in her ability to use her left hand caused by her hand injury at age three.  Thus, the ALJ did not err in failing to include this specific manipulation limitation in his RFC finding.

Plaintiff points to evidence in the record that she is essentially blind in one eye. Plaintiff posits that this condition "would clearly cause the loss of depth perception" and therefore the ALJ erred in failing to include this limitation in the ALJ's RFC finding. Plaintiff's Brief, at 14.  Plaintiff did not, however, describe any difficulty with depth perception and no doctor indicated that Plaintiff's loss of vision in her left eye caused a depth perception impairment.  The ALJ therefore did not err in failing to include any depth perception limitation in his RFC finding.  Because substantial evidence in the record supports the ALJ's findings and conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, the Commissioner's decision should be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____August 14th_____, 2008, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____25th_____ day of _____July_____, 2008.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE